IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROGER KRAMER, et al., : CIVIL ACTION
:
    Plaintiffs, :
:
v. :
:
ALLSTATE INSURANCE COMPANY, : No. 12-4407
:
    Defendant. :

## MEMORANDUM OPINION

Plaintiffs Roger Kramer and Colleen O'Neill Brusius filed a breach of contract action against Defendant Allstate Insurance Company ("Allstate") based on their home insurance policy number 0234624260 (the "Policy") for soot damage in their home located on Tina Drive in Langhorne, Pennsylvania (the "Property").[1] Based on the testimony presented during the September 24, 2013 bench trial, and for the following reasons, I award $12,100.00 to repair and restore Plaintiffs' Property. I also award Plaintiffs $12,000.00 for Additional Living Expenses ("ALEs"), conditioned upon Plaintiffs submitting proof within 30 days of the accompanying Order that they are using the award to repair their Property.

A plaintiff asserting a breach of contract claim must prove: "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages.'" Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)). "The goal of interpreting an insurance policy, like that of interpreting any other contract, is to determine the intent of the parties. It begins with the language of the policy." Meyer v. CUNA Mut. Ins. Soc.,

---

[1] Pursuant to a stipulation between the parties, Plaintiffs dismissed their bad faith claim. See Stip. (doc. 11).

648 F.3d 154, 163 (3d Cir. 2011). When the language of the policy is clear and unambiguous, I must give effect to that language. Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 595 (3d Cir. 2009) (citing Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (2007)). "However, 'when a provision in the policy is ambiguous, the policy is to be construed in favor of the insured . . . .'" Id. (quoting Donegal Mut. Ins. Co., 938 A.2d at 290).

Plaintiffs' Policy covered "sudden and accidental direct physical loss" to the Property. See Def.'s Ex. 1, Policy at 7. In the event of a covered loss, Allstate could: (1) repair or replace all or part of the damaged or destroyed property with "property of like kind and quality within a reasonable time;" or (2) pay for all or part of the damaged or destroyed property. Id. at 21. The Policy also provided that, in the event that a covered loss made the residence uninhabitable, Allstate would pay Plaintiffs' ALEs, which are the costs of reasonably increased living expenses necessary to maintain their normal standard of living. Id. at 16. ALEs were limited to the least of: (1) the time required to repair or replace the covered property, using "due diligence and dispatch;" (2) if Plaintiffs permanently relocated, the shortest time for Plaintiffs to settle their household elsewhere; or (3) 12 months. Id.

The parties agree that the soot damage in Plaintiffs' Property was covered by the Policy, and that Allstate has already provided Plaintiffs the following payments: (1) $8,479.66 for dwelling damages; (2) $8,095.06 for unscheduled personal property damages; and (3) $40,806.90 for five months of ALEs. See Bench Tr. Stip. (doc. 44) ¶ 3. However, the parties dispute the amount of money required to restore Plaintiffs' Property to its pre-loss condition and the method by which Plaintiffs could complete the restorations.

Plaintiffs claim Allstate breached the Policy by providing insufficient payment for their

2

damaged Property and ALEs for only five months. They seek $198,360.15, minus any payments already received by Allstate, based on the estimate calculated by Steven Knop, an expert in damage estimating. See Bench Tr. Stip. ¶¶ 9, 10. Plaintiffs also seek 12 months of ALEs, demanding that Allstate pay the remaining seven months of the ALEs the Policy allowed. See id. ¶ 10. Allstate argues it paid Plaintiffs sufficient damages to cover their loss and ALEs. It also contends that the Property could be cleaned and does not require painting, re-carpeting, or removal of all contents prior to repairs being initiated.

Allstate failed to provide Plaintiffs with sufficient payment for repair or payment for all or part of the Plaintiffs' covered loss. Although the $16,574.72 payment was sufficient to allow Plaintiffs to clean a majority of the Property and its contents, it was insufficient to repair or replace all of the covered losses. Karen Washko, an expert in insurance adjustment and damage estimating, testified that most of the Property's walls were painted in high-gloss paint and could be easily cleaned. See Bench Tr. Stip. ¶ 8. However, a number of the Property contents and small items, referred to as "nic-nacks," required cleaning. Although I agree with William H. Neef, an expert in cleaning and restoration, that a "pack-out" of the contents was unnecessary, the contents must be cleaned and Plaintiffs should be reimbursed for those cleaning costs.[2] See Bench Tr. Stip. ¶ 5. Thus, I award an additional $3,000.00 for cleaning costs.

I also award the costs for repairing portions of the Property damaged by soot. I disagree,

---

[2] Knop included the costs of a "pack-out" of Plaintiffs' Property. He explained that when individuals have "the resources," such as being insured, they should conduct the expensive and time-consuming process of removing all of the items, packing them, shipping them, and storing them in another location. This explanation demonstrates that a pack-out is an unnecessary. Knop's testimony regarding the pack-out also was contradicted by Neef's testimony that the standard practice is to clean on-site.

3

however, with Knop's estimate, which essentially calls for the total restoration of Plaintiffs' Property. Although Knop testified the Property had soot damage in every room, only minimal soot is visible in the color photographs and Washko and Neef testified the soot they observed in the Property was minor. Frederic M. Blum, an expert in forensic mechanical engineering, industrial accidents, domestic accidents, and fires, testified that most of the rooms had as little as 10-15% of soot contaminants in the samples he tested, which means these rooms were "moderately" contaminated with soot. See Bench Tr. Stip. ¶ 6; Def.'s Ex. 5, Blum's Report. The playroom was the only room that had 30% of soot, which he found to be "severely" contaminated. Id. Further, Plaintiffs were not aware there was soot in their Property until Knop arrived to provide an estimate for an unrelated Property issue. In its totality, such evidence establishes that Knop's estimate was exaggerated and inflated. Accordingly, I will use only portions of his estimate in determining material costs because Knop testified they are based on standard retail prices and appear to be reasonable.

I award $3,000.00 for sealing and painting the ceilings in Plaintiffs' Property which, unlike the high-gloss, painted walls, are more difficult to clean. This amount is based on Neff's square footage measurements and Knop's material costs estimate. See Pl.'s Ex. 2, Knop's Estim.; Def.'s Ex. 6, Neef's Estim. at 20. Although Knop's estimate calls for replacement of all carpeting, Neff testified that the darkness under the carpeting was not soot, but filtration marks. The carpets in the rooms with 20 or 30% soot contamination, however, should be replaced rather than cleaned. Plaintiffs are awarded $3,800.00 to carpet the dining room, hall, and in-law's suite.³ See Knop's Estim. for Dining Rm. at 13; Neef's Estim. for In-law suite at 18. I also

---

³ Because it does not appear from the pictures or Knop's estimate that the playroom was

4

award labor costs equal to approximately 10% of each of these totals, based on Knop's estimate for profit costs, totaling $700.00. See Knop's Estim.

Plaintiffs also are entitled to dry cleaning costs. There is a huge discrepancy between Knop's and Neef's dry cleaning estimates, and neither could rationally justify their estimates. See Knop's Estim. at 1; Neff's Estim. at 19. I award $1,600.00 for dry cleaning costs, based on Roger Kramer's testimony that there were four people living in the Property at the time of the loss and that the soot could not be removed from the clothing during a normal wash.

Allstate asserts several unconvincing arguments as to why Plaintiffs are not entitled to any additional damages. First, Allstate argues that Plaintiffs have engaged in a pattern of making insurance claims, receiving damages, and failing to make repairs. However, Allstate does not dispute that the February 7, 2012 loss is covered by the Policy and it has already paid some damages. Second, Allstate's emphasis on a prior loss is misplaced; it is not the subject of this lawsuit and it added little to Allstate's damages argument. Third, Allstate argues that Plaintiffs failed to mitigate their damages by turning the furnace off to stop soot from entering the Property. Although Washko, Blum, and Neef testified that the Property's temperature was "comfortable" when they arrived to make their assessments, Knop also testified that the furnace was turned on only during those visits. Kramer testified that Plaintiffs were no longer living there, thus it is unlikely that the furnace would be left on. Blum also testified that he believed no one was living in the Property.[4] Finally, Allstate's continuous mention of candle residue in the

---

carpeted, costs for re-carpeting that room are not awarded.

[4] Allstate's mitigation argument also is inconsistent with its claim that the cause of the soot damage is unknown. Allstate elicited testimony from Blum that the playroom, the room with the highest amount of soot contamination, is not heated by the furnace. Thus, Allstate argues "there

5

Property is unpersuasive. Washko testified that, as long as there is a sudden or accidental loss, the claim will be covered, regardless of contemporaneous candle residue.

Accordingly, I award a total of $12,100.00 in damages to Plaintiffs for their covered Property loss.

Plaintiffs also seek the remaining seven months of ALEs. Kramer testified that the last time he and his family resided in the Property was on February 7, 2012. They were staying in a hotel for a period of time, which Allstate paid for, and are currently living in an apartment. Allstate contends that it stopped providing Plaintiffs with ALEs because they did not begin the Property repairs. In response, Plaintiffs assert that they did not begin repairs because Allstate did not give them enough money to complete all of the repairs at one time.

Plaintiffs' judgment award is sufficient to begin and complete the covered Property repairs. They are entitled to ALEs for the time their Property is uninhabitable. See Policy at 16. Allstate had generously provided Plaintiffs with five months of ALEs after they submitted their claim for the soot damage and stopped only upon learning Plaintiffs did not initiate the repairs. Thus, Allstate must have considered the Property uninhabitable for the time it expected Plaintiffs to be making repairs.[5] Plaintiffs are entitled to additional ALEs during the time they repair the Property.

Washko estimated it would take one month to complete the Property repairs. Neef also

---

is something else going on with this house," other than the furnace. This argument also does not make the loss in that room, or any other room in the Property, uncovered under the Policy.

[5] Kramer testified that Plaintiff Colleen O'Neill Brusius has asthma, which may have been the reason Plaintiffs immediately moved from the house and the reason they would want to complete the repairs all at one time. See also Am. Compl. (doc. 5) at ¶ 11 (Brusius "is unable to reside in the damaged premises as a result of a medical condition. . . . [the] home is not safe" for her).

6

testified that it would take four to six weeks to make the repairs, but one month would be reasonable. Accordingly, Plaintiffs are awarded one and a half months of ALEs, totaling $12,000.00, based on their previous receipt of approximately $8,000.00 per month in ALEs from Allstate.

Plaintiffs, however, first must establish that they have started the Property repairs and are not residing in the Property. Upon receipt of such proof within 30 days, I will order Allstate to pay the contingent ALEs of $12,000.00.

BY THE COURT:

_____
TIMOTHY R. RICE
United States Magistrate Judge

ENTERED
OCT -7 2013
CLERK OF COURT